## Lorenzo Bull et al.
### v.
## The City of Quincy.

1. Penal action—Burden of proof.—This was an action to recover a penalty for a failure to take out a license as required by the city ordinance. Being in the nature of a penal action, it is incumbent upon the plaintiff to prove every step in the chain of facts upon which its right of recovery rests.

2. License—Must be an ordinance authorizing its issue.—Although a city has the power to require a license, yet this power remains dormant until called into activity by some appropriate ordinance. Without the adoption of a general ordinance authorizing the issuing of licenses, specifying who shall issue them, the length of time they are to run, the amount to be paid, and the time and manner of payment, the authorities are powerless to issue license to any one, and proof of such an ordinance must be made in an action to recover a penalty, as in this case.

Appeal from the Circuit Court of Adams county; the Hon. J. H. Williams, Judge, presiding. Opinion filed October 19, 1881.

Messrs. Marsh & McFaddon, for appellants; that the rule of strict construction applies in actions of this character, and the burden is upon the plaintiff throughout, cited Joyce v. City of E. St. Louis, 77 Ill. 158; Chicago Rumpff, 45 Ill. 99.

Although the city may have the power to license, under its charter, yet this power must be brought into activity by appropriate municipal legislation: The People v. Village of Crotty, 93 Ill. 181.

This must be by an ordinance prohibiting the carrying on of such business without a license: Hoyer v. Town of Mascoutah, 59 Ill. 139; City of E. St. Louis v. Wehrung, 50 Ill. 32; Chilvers v. The People, 11 Mich. 49; Cooley on Taxation, 407.

The license fee in question must be sustained, if at all, on the ground that it is a tax imposed by the city on a business: License Tax Cases, 5 Wall, 462.

A tax on occupations cannot be sustained, notwithstanding the adoption of the new constitution, for taxes must be uniform in respect to persons and property within the jurisdic-

tion of the body imposing the same:   Wiggins v. Chicago, 68 Ill. 379.

And this ordinance makes an unwarranted discrimination against bankers:   Burroughs on Taxation, 68;  State v. Mer. Ins. Co. 12 La. 802;  New Orleans v. Home Ins. Co. 23 La. 449;  Parish of Orleans v. Cochran, 20 La. 373;  Cooley on Taxation, 128;  Am. Un. Ex. Co. v. St. Joseph, 66 Mo. 681;  St. Louis v. Sternberg, 69 Mo. 301;  Dillon on Mun. Cor. § 256;  Tugman v. Chicago, 78 Ill. 407.

Mr. CARL E. EPLER, and Mr. JAMES E. PURNELL for appellee; that the adoption of an ordinance authorizing the issue of licenses, specifying who shall issue them, time they shall run, amount to be paid, and time of payment, is sufficient: cited The People v. Village of Crotty, 93 Ill. 188;  Dillon on Mun. Cor. § 245;  Cincinnati v. Gwynne, 10 Ohio, 192;  Markle v. Akron, 14 Ohio, 586;  St. Louis v. Buffingen, 19 Mo. 13;  McDermott v. Board of Police, 5 Abb. Pr. 422.

Appellants are bound to take notice of the ordinances of the city: Heland v. City of Lowell, 3 Allen, 408;  Pierce v. Bartrum, Cowp. 270;  James v. Tenny, Cro. Cor. 498;  Master, etc., v. Bullock, 3 Bos. & Pul. 442.

The term " banker" includes all the business of a money-changer: Hinckley v. City of Belleville, 43 Ill. 184;  Webster's Dic.

A municipal corporation empowered to grant licenses, may lawfully impose a penalty for a failure to take out a license: Cooley on Taxation, 414;  Cincinnati v. Buckingham, 10 Ohio, 257; White v. Kent, 11 Ohio, 550;  Vandine petitioner, 6 Rick. 187; Nightingale, petitioner, 11 Rick. 167;  Stulton v. Mobile, 3 Ala. 540;  Brooklin v. Cleves, Lalor, 231;  Buffalo v. Webster, 10 Wend. 100.

A thing done may in itself be lawful, and only prohibited to compel taking out a license: Brooklyn v. Breslin, 57 N. Y. 591.

The fact that a license is required is of itself a prohibition of such act without a license:  Chilvers v. The People, 11 Mich. 49.

Bull v. City of Quincy.

There is nothing objectionable in the ordinance, although it may be considered as invoking the police power of the State: Allerton v. Chicago, 6 Federal Rep'r, 556; Dillon on Mun. Cor. § 329; Frankfort, etc., Passenger Co. v. Philadelphia, 58 Pa. St. 119, 191; Johnson v. Philadelphia, 60 Pa. St. 445; Munn v. Illinois, 94 U. S. 113.

McCulloch, J. This was a suit commenced before a justice of the peace by appellee against appellants as co-partners, to recover a penalty provided by the city ordinances for a failure to take out a license, as provided by section 13 of article 1, of chapter entitled Licenses, passed on the 20th day of September, 1875.

The suit having been carried by appeal into the circuit court, a trial was there had before the court without a jury, and judgment rendered against appellants for the sum of ten dollars, to reverse which judgment an appeal was taken to this court.

The City of Quincy is empowered by its charter " to license, tax and regulate auctioneers, merchants and retailers, groceries or drinking saloons, beer-houses, taverns, ordinaries, hawkers, peddlers, brokers, pawnbrokers, and money-changers, and to revoke such licenses at pleasure.

Appellants were doing business as bankers in the City of Quincy during the period in question, and it is claimed on the part of appellee that their business embraces that of *money-changers*, and that they may be required to take out licenses to carry on their business. In support of this position they cite us to the case of Hinckley vs. City of Belleville, 43 Ill. 184. However desirable it might be to arrive at a decision of this question at this time, we do not find the point fairly presented by the proofs contained in the record now before us.

This being in the nature of a penal action, it was incumbent upon the plaintiff in the court below to prove every step in the chain of facts upon which its right of recovery rested. Joyce v. City of East St. Louis, 77 Ill. 156; The People, &c., v. the Village of Crotty, 93 Ill. 180.

Appellee first introduced an ordinance, No. 74, adopted by

the city council March 17, 1881, which provides that "licenses may be issued during the fiscal year ending March 31, 1881, on application to the city clerk, as provided in Chapter XVI of the Revised Ordinances, and the person or persons applying therefor complying with all the requirements thereof, and paying for said licenses the sums of money stated for the different kinds of business, occupation and privileges specified in the following table, to-wit:" Then follows a tabulated statement of thirty-five different occupations, and other subjects of taxation for which licenses might be issued, together with the rates to be paid in each case. Among these items we find " Banks as money-changers," for which the license fee is set down at $50 for one year, $30 for six months, and $20 for three months.

The second section of this ordinance provides for the adjustment of the rates to be paid for periods of time not specified in section one. Section three requires a license to be paid by the owner of vehicles run for hire, while section four defines what is meant by the term " street-broker." Section five of this ordinance provides that " any person who shall fail to provide himself with a license, as required by the foregoing ordinance, or any ordinance of this city, within five days after the time he shall enter into any business or occupation for the carrying on or transaction of which a license is required, or within five days after his license shall have expired, or within five days after the time he shall have been served with notice from the city clerk, as in the preceding section provided, shall be liable to a fine of not less than ten nor more than one hundred dollars for each and every offense, unless otherwise provided herein." This section is an almost exact copy of section 13, of article 1, of chapter 16, of the Revised Ordinances, which section appellee next offered in evidence, without offering anything further from the Revised Ordinances.

It was then admitted that during the whole year then last past appellants had carried on the business of banking at Quincy, and that notice in writing had been served upon them by the city clerk previous to the commencement of the suit, requiring them, as money-changers, to take out license. This was all the evidence introduced by appellee.

It was for a violation of this Section 13, Art. 1, Chap. 16, of the revised ordinances this suit was brought. So far as this suit is concerned, it might as well have been brought for a violation of Section 5, of the ordinance of March 17, 1880, for as to the matter complained of, the two ordinances are *in pari materia*. The question then is, whether or not appellee has shown a right of recovery under either of them.

While the charter confers upon the city council the power to require a license for the carrying on of certain occupations, yet this is a power which necessarily remains dormant until called into activity by some appropriate ordinance. Such an ordinance is necessary to enable the city authorities to act in the premises. As was said by the Supreme Court, in The People, &c., v. Village of Crotty, *supra*, " Without the adoption of a general ordinance on the subject, authorizing the issuing of licenses, and specifying who shall issue them, the length of time they shall run, the amount to be paid by the applicant, the time and manner of payment, etc., the village authorities are powerless to issue license to any one."

The ordinance of March 17, 1880, contains no such provisions. It appears to be but a temporary ordinance fixing the rates at which licenses might be issued for the year expiring March 31, 1881, but the manner of issuing the licenses is not fixed by it. It provides that licenses may be issued on application to the city clerk, as provided in Chapter XVI of the revised ordinances, and the person or persons applying therefor, complying with all the requirements thereof and paying the sums specified in the accompanying table.

What the requirements of said Chapter XVI are, nowhere appears from this record, as no part of it except said Section 13 was offered in evidence. Whether or not it prohibits the exercise of the several callings therein mentioned unless the license be paid, or whether the license is in the nature of a special tax, and if so, whether or not it operates uniformly upon all of the same class, cannot be gleaned from anything contained in this record. It is contended, on the part of appellants, that they are singled out and taxed as money-changers, when all other money-changers go untaxed. We cannot tell, except by

inference, that bankers as money-changers are embraced within the terms of the revised ordinance relating to licenses, nor can we tell whether or not the rule of uniformity has been violated.

This general ordinance lies at the very foundation of appellee's right of recovery in this case, and without its being in evidence no right of recovery is shown. Should that prove in other respects to be a valid ordinance, and should bankers as money-changers appear to be fairly embraced within its terms, it will then fairly present the question whether or not the city council has exceeded the powers conferred upon it by the charter. The judgment of the circuit court will therefore be reversed and the cause remanded.

Reversed and remanded.